UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT ANGUS HEATH,

        Petitioner,

                                          Case Number: 04-10156
v.                                            Honorable David M. Lawson

DOUG VASBINDER,

        Respondent.

_____/

## **OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

The petitioner, Robert Angus Heath, a state prisoner currently confined at West Shoreline Correctional Facility, in Muskegon Heights, Michigan, has filed through his attorney a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner's present custodian is Mary Berghuis, but when he filed his petition, he was confined at G. Robert Cotton Correctional Facility in Jackson, Michigan and his custodian at that time was Douglas Vasbinder.

The petitioner was convicted of first-degree criminal sexual conduct, Mich. Comp. Law § 750.520b(1)(f), on October 5, 2001 following a jury trial in the St. Clair County, Michigan circuit court. He was sentenced on November 26, 2001 to six to thirty years imprisonment. The petitioner raises five separate claims in support of his contention that he is being held in violation of his rights under the Constitution and laws of the United States. The respondent has filed an answer to the petition asserting that habeas relief should be denied because the claims are either not cognizable under habeas review, procedurally defaulted, or without merit. The Court finds that the petitioner is not entitled to habeas relief, and therefore the petition will be denied.

I.

The conviction in this case arises from the alleged rape of Tamara Tobias in the petitioner's home sometime during the late evening of April 6 and the early morning hours of April 7, 2000. Ms. Tobias and the petitioner each testified that they met each other at "Snoopy's Bar." After sharing a few drinks and talking about their pets, Ms. Tobias and the petitioner drove to the petitioner's home where they shared more drinks, smoked marijuana and played with the petitioner's dog. Ms. Tobias then wanted to leave to meet her friends at another bar called the "Winner's Circle." The petitioner wanted to come along, and Ms. Tobias drove the two of them to the bar. After having a few more drinks, Ms. Tobias and the petitioner left the Winner's Circle, drove to her home so that she could pick up her dog, and returned to the petitioner's home. Ms. Tobias and the petitioner had another drink, smoked a little more marijuana and played with the dogs. Because Ms. Tobias was feeling light headed, she did not want to drive home. They agreed that Ms. Tobias should stay overnight and she was to sleep on the couch downstairs. Because she was feeling warm, Ms. Tobias asked the petitioner if she could borrow one of his t-shirts. It is at this point where the petitioner's and Ms. Tobias's accounts of what occurred diverge.

The petitioner testified that he went to get Ms. Tobias a t-shirt, but she never accepted it because it was at that point that the two of them began kissing, which led to the two of them having sex. He said that when the two of them awakened in the morning, Ms. Tobias was very cranky and angry, yelled at the petitioner, accused him of taking advantage of her, and left the petitioner's home.

Ms. Tobias testified that she accepted the t-shirt and went into the bathroom to change her shirt. When she came out of the bathroom, the petitioner was standing outside the bathroom door

naked. She tried to run away, but he grabbed her, cursed at her, and hit her about the head to the point of her becoming semi-conscious. She recalls fighting off the petitioner, his use of a knife to threaten her, and being raped. However, she claims that she does not have a detailed memory of what happened because she was not fully conscious. She recalled awakening in the morning, grabbing her coat, leaving the petitioner's home, and going to her sister's residence. On the morning of April 7, 2000, Ms. Tobias and her sister went to the hospital, and the police were notified.

The jury apparently accepted Ms. Tobias's version of the events, as it found the petitioner guilty of first-degree criminal sexual conduct. The petitioner filed a direct appeal in the Michigan Court of Appeals raising four issues in the brief filed by his attorney: (1) there was insufficient evidence to sustain a conviction; (2) improper "other acts" testimony – that the petitioner sexually assault other women – was received in evidence; (3) the trial court erred in delivering its cautionary jury instruction; and (4) the prosecutor engaged in misconduct by: (a) vouching for the truthfulness of the complainant; (b) denigrating the petitioner, his defense, and his trial counsel; (c) arguing facts not in evidence; (d) mischaracterizing the evidence; and (e) making an improper civic duty argument. The petitioner then filed a *pro se* supplemental brief contending that he was denied equal protection and due process of the law when the prosecution intentionally presented false evidence and allowed the testimony to stand without correction. The Michigan Court of Appeals affirmed the petitioner's conviction on October 14, 2003. *People v. Heath,* 2003 WL 22339157 (Mich. App. Oct. 14, 2003), and the state supreme court denied leave to appeal when the same five issues were presented to it. *People v. Heath,* 470 Mich. 858, 679 N.W.2d 699 (Apr. 30, 2004) (Table).

The petitioner thereafter filed his federal petition for writ of habeas corpus asserting the same five claims. The respondent has filed an answer to the petition asserting that habeas relief should be

denied because the claims are either not cognizable under habeas review, procedurally defaulted, or without merit.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, which govern this case, "circumscribe" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody

pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410-11; *see also Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

A.

The petitioner first contends that he is entitled to habeas corpus relief because the prosecution failed to produce sufficient evidence at trial to sustain his conviction for first-degree criminal sexual conduct. He argues that because Ms. Tobias's account of events was riddled with inconsistencies, contradictions and questionable testimony that was impeached by certain witnesses, the prosecution was unable to sustain its burden at trial to provide sufficient evidence of guilt as a matter of law.

> The state court of appeals rejected that claim with these words:
> 
> Defendant first contends that the prosecution failed to present sufficient evidence to support his conviction. We disagree.
> 
> We review the sufficiency of the evidence in a criminal case de novo. *People v. Bowman*, 254 Mich App 142, 151; 656 NW2d 835 (2003). Viewing the evidence in the light most favorable to the prosecutor, we determine whether a rational trier of fact could find the prosecutor proved the essential elements of the crime beyond a reasonable doubt. *People v. Johnson*, 460 Mich 720, 723; 597 NW2d 73 (1999).
> 
> Defendant asserts that the victim's testimony was so incredible as to render the prosecution's evidence insufficient to support his conviction. Defendant points to inconsistencies in the victim's testimony, and to contradictions between her testimony and that of other prosecution witnesses.
> 
> Defendant contends that the generally applicable principles that we must resolve all inconsistencies in the prosecution's favor, *Johnson, supra* at 723, and that we may not interfere with the jury's assessment of the victim's credibility, *People v. Terry*, 224 Mich App 447, 452; 569 NW2d 641 (1997), should be set aside because this case presents exceptional circumstances under *People v. Lemmon*, 456 Mich. 625, 643-644; 576 NW2d 129 (1998). Defendant asserts that the victim's potently

inconsistent testimony was inherently implausible, and was seriously impeached on every aspect, and that her recollection and statements were marked by uncertainties and discrepancies. *Lemmon, supra* at 643, however, states that "when testimony is in direct conflict and testimony supporting the verdict has been impeached, if 'it cannot be said as a matter of law that the testimony thus impeached was deprived of all probative value or that the jury could not believe it,' the credibility of witnesses is for the jury." The inconsistencies in the complainant's testimony do not rise to the level required to justify appellate intervention respecting the jury's verdict. We cannot say that the complainant's testimony could not be believed by a reasonable juror.

*People v. Heath,* 2003 WL 22339157 at *1.

This decision reasonably applied federal law. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).

> [T]his inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id*. at 318-19 (internal citation and footnote omitted). This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law ." *Id*. at 324 n.16. A habeas court must defer to the factfinder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

Michigan's first-degree criminal sexual conduct statute states:

(1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:

> . . .
> (f) The actor causes personal injury to the victim and force or coercion is used to accomplish sexual penetration.

Mich. Comp. Laws § 750.520b(1)(f). Michigan courts have read this statute to define the elements of first-degree criminal sexual conduct as: (1) sexual penetration with another person, and (2) the defendant causes personal injury to the victim and force or coercion is used to accomplish the sexual penetration. *People v. Wilkens*, 267 Mich. App. 728, 737, 705 N.W.2d 728, 736 (2005); *People v. Asevedo*, 217 Mich. App. 393, 395, 551 N.W.2d 478, 480 (1996). These elements were established through Tamara Tobias's testimony, which was corroborated in some measure by other evidence.

In addition to Tobias's own version of events, the State presented testimony from Tobias's sister and a representative from Domestic Assault Rape Elimination Services (DARES). Both of these individuals said that they saw and spoke with Ms. Tobias shortly after the alleged rape and attested to their observation of her emotional and physical state and what Tobias told them about the alleged sexual assault. The State also presented forensic evidence and medical testimony from a nurse and an emergency room physician. It also presented the testimony of a police officer and a detective who described the petitioner's emotional and physical condition.

It was not unreasonable for the state court of appeals to conclude from this record that a rational trier of fact could have found beyond a reasonable doubt that Ms. Tobias did not consent to having sexual intercourse with the petitioner and she sustained injury as a result of the sexual assault. Therefore, the Court finds that the state appellate court's disposition of the petitioner's claim was neither contrary to nor an unreasonable application of clearly established federal law.

B.

The petitioner next contends that the trial court erred in admitting evidence that the petitioner was involved in sexually assaulting two other women on different occasions. The state court received evidence that the petitioner assaulted a woman named Suzette LaPalme, which resulted in a criminal offense charge of third-degree criminal sexual conduct. That charge eventually was dismissed. The second incident involved a woman named Gina Woehlert. That alleged sexual assault did not result in a criminal charge.

The state court of appeals determined that the trial court did not err in admitting the evidence. Its decision was based entirely on state law:

> [D]efendant contends that the trial court erred in admitting evidence of another alleged sexual assault by defendant to demonstrate a common scheme, system, or plan. We disagree.
>
> . . .
> Defendant asserts that there were insufficient similarities between the acts to demonstrate a common scheme or plan. Although defendant stresses dissimilarities between the encounters, MRE 404(b)(1) does not require perfect similarity for admission of other acts evidence to demonstrate a common scheme or plan. *People v. Sabin, (After Remand),* 463 Mich. 43, 65-66; 614 N.W.2d 888, on remand 242 Mich. App. 656 (2000). Here there were similarities sufficient under *Sabin* to support the trial court's ruling.
>
> Defendant also contends that the prejudicial effect of the other acts evidence outweighed its probative value. The other acts evidence was probative of a common scheme or plan. Defendant has not demonstrated that the prejudicial effect substantially outweighed the probative value. The trial court did not err in admitting the evidence.

*People v. Heath,* 2003 WL 22339157 at *1-2.

"Habeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation." *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994). The Sixth Circuit Court of Appeals has explained that:

> "[E]rrors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding." *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (quoting *Patterson v. New York*, 432 U.S. 197, 202 (1977)); *see also Spencer v. Texas*, 385 U.S. 554, 563-64 (1967).

*Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000). The Supreme Court has declined to hold that admission of "other acts" evidence is so extremely unfair that it violates fundamental precepts of justice. *See Dowling v. United States*, 493 U.S. 342, 352-53 (1990). Such matters are more appropriately addressed in codes of evidence than under the Due Process Clause. *Id.* at 352.

The Sixth Circuit has repeatedly held that only "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Although the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. Therefore, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512. Consequently, there is no Supreme Court precedent that the state court decisions could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1). *Bugh*, 329 F.3d at 513.

Nor has the Supreme Court ever held that evidence tending to prove criminal propensity violates due process. *Estelle*, 502 U.S. at 75 n.5. In fact, such evidence is allowed in sexual assault cases under the Federal Rules of Evidence. *See* Fed. R. Evid. 413.

The Court therefore cannot say that admission of the petitioner's past misdeeds violated any of his federal rights.

C.

The petitioner next maintains that the trial court erred when it gave its limiting jury instruction about "other acts" evidence. He asserts that the trial court's instruction was confusing because it did not limit the purpose for which the jury properly could consider the other acts evidence. The cautionary instruction was read to the jury as follows:

> You have heard evidence that was introduced to show that the Defendant committed improper acts for which he is not on trial.
>
> If you believe this evidence, you must be very careful only to consider it for certain purposes. You may only think about whether this evidence tends to show:
>
> That the Defendant acted purposefully, that is not by accident or mistake, or because he misjudged the situation.
>
> That the Defendant used a plan, system or characteristic scheme that he has used before or since.
>
> You must not consider this evidence for any purpose [sic]. For example, you must not decide that it shows that the Defendant is a bad person or that he is likely to commit crimes. You must not convict the Defendant here because you think that he is guilty of other bad conduct. All the evidence must convince you beyond a reasonable doubt that the Defendant committed the alleged crime, or you must find him not guilty.

Trial Tr., Oct. 5, 2001 at 931-32.

The state appellate court rejected this claim because defense counsel made no contemporaneous objection to the cautionary instruction. That court stated:

> Defendant next contends that the trial court improperly instructed the jury regarding the use of the other acts evidence. Defendant's attorney, by expressing satisfaction with the jury instructions, relinquished defendant's right to object to them later, and waived this issue for appeal. *People v. Carter,* 462 Mich. 206, 215-216; 612 N.W.2d 144 (2000).

-11-

*People v. Heath,* 2003 WL 22339157 at *2.

The respondent argues that the state court's determination that the petitioner violated the state procedural rules – thereby forestalling consideration of the merits of his federal constitutional claims – constitutes an independent and adequate ground under state law that this Court may not overturn. The respondent makes a valid point. The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 752, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict, *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

But even if the petitioner's procedural default did not present an obstacle, the petitioner would not be entitled to relief because the trial court's limiting instruction, correct or not, did not trench upon the petitioner's federal rights. The point of the limiting instruction in this case was to tell the jury that it could not consider the other act evidence for an improper purpose, *viz*, the petitioner's propensity to commit sexual assaults. However, even if the instruction did convey that point to the jury, there was no due process violation because, as noted earlier, the Constitution does not bar the use of other acts evidence for that purpose. *Bugh*, 329 F.3d at 512.

-12-

The limiting instruction might have been fashioned more effectively, but it is unlikely that the jury was confused. No constitutional violation resulted, and this instruction provides no basis for a writ of habeas corpus.

D.

The petitioner's last two claims are directed at the alleged misconduct of the prosecutor. He contends that the prosecutor improperly vouched for the truthfulness of the State's witnesses, denigrated the petitioner and his defense, argued facts not in evidence, mischaracterized evidence, and improperly appealed to the civic duty of the jury. The petitioner also alleges that he was denied rights under the Equal Protection Clause and the Due Process Clause when the state prosecutor knowingly allowed Tamara Tobias to perjure herself without correcting the erroneous testimony.

The Michigan Court of Appeals rejected the vouching and denigration claims on the merits and denied relief on the other claims on the ground that they were not preserved for appellate review. The were in fact no objections at trial to some of the state prosecutor's conduct, but the Court need not address the procedural default issue here. The doctrine of procedural default is not jurisdictional. *Trest v. Cain,* 522 U.S. 87, 89 (1997); *Howard v. Bouchard,* 405 F.3d 459, 476 (6th Cir. 2005). "[J]udicial economy sometimes dictates reaching the merits of [a claim] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo,* 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also Lambrix v. Singletary,* 520 U.S. 518, 524-25 (1997); *Ferensic v. Birkett,* 451 F. Supp. 2d 874, 887 (E.D. Mich. 2006). The Court finds it expeditious to address the merits of the prosecutorial misconduct claims.

The state appellate court rejected the claims as follows:

Defendant also contends that remarks by the prosecutor during closing arguments constituted misconduct. Defendant failed to object to most of the complained-of

> remarks. Because in each unobjected to instance an objection could have cured any error, our review is precluded, except concerning two remarks. *People v, Kelly,* 231 Mich App. 627, 638; 588 NW2d 480 (1998). With regard to these statement, we review the claim of prosecutorial misconduct de novo, but we review the trial court's factual findings for clear error. *People v. Pfaffle,* 246 Mich App. 282, 288; 632 NW2d 162 (2001).
>
> Defendant first asserts that the prosecutor improperly vouched for a witness's credibility. The prosecutor simply argued that the jury should believe the witness's testimony because she had no motivation to lie, and she had testified consistently. The prosecutor did not indicate she had special knowledge concerning the witness' truthfulness or ask the jury to convict defendant on the basis of the prosecutor's personal knowledge. *People v. Bahoda,* 448 Mich 261, 276, 286-87; 531 NW2d 659 (1995).
>
> Defendant also argues that the prosecutor denigrated defendant by stating his wounds appeared to be self-inflicted. The prosecutor, however merely argued from the evidence and the reasonable inferences drawn therefrom that defendant's wounds were self-inflicted.

*People v. Heath,* 2003 WL 22339157 at *2.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams,* 376 F.3d 520, 528 (6th Cir. 2004). Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Caldwell v. Russell,* 181 F.3d 731, 736 (6th Cir. 1999). The Court must focus on the "fairness of the trial, not the culpability of the prosecutor." *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir. 1997).

The first question to consider is whether the prosecutor's conduct or remarks during her closing argument were improper. *See Slagle v. Bagley,* 457 F.3d 501, 515-16 (6th Cir. 2006). If they were, the Court must consider whether the improper conduct was so flagrant as to warrant reversal. *Id.* at 516. The Sixth Circuit has identified four factors to consider when analyzing conduct for flagrancy: "(1) whether the statements tended to mislead the jury or prejudice the

defendant; (2) whether the statements were isolated or among a series of improper statements; (3) whether the statements were said deliberately or accidentally before the jury; and (4) the total strength of the evidence against the accused." *Millender*, 376 F.3d at 528 (internal quotes omitted).

The Court agrees with the state court's finding that the prosecutor did not improperly vouch for the credibility of the State's witnesses. "Improper vouching occurs when a jury could reasonably believe that a prosecutor was indicating a personal belief in a witness' credibility." *Taylor v. United States,* 985 F.2d 844, 846 (6th Cir. 1993). Improper vouching also occurs when the prosecutor argues evidence not in the record, *United States v. Martinez,* 981 F.2d 867, 871 (6th Cir. 1992), or when the prosecutor supports the credibility of a witness by expressing a personal belief in the truthfulness of the witness's testimony, thereby placing the prestige of the prosecutor's office behind the witness, *see United States v. Francis,* 170 F.3d 546, 549-50 (6th Cir. 1999).

None of that happened in this case. The prosecutor merely pointed out that the State's witnesses lacked a motive to lie. The prosecutor properly may argue that there is no evidence of bias or an interest in the outcome of the case on the part of the State's witnesses. A jury rightfully may consider those factors in determining the weight to be given such witness's testimony.

The petitioner next asserts that the prosecutor denigrated the petitioner and his defense. The challenged language is as follows:

> Someone who is willing to do that (scratching himself) is guilty of a crime. He realized that he hurt her so badly he knew exactly what he had done, that he tried to build his own defense, right from the beginning. He was anticipating you. Don't be conned. This is such an important case. What happened to Tammy Tobias and Gina Woehlert is insidious. It is not tolerable. Not today. Not in this State. Not in this country. Hold him accountable for what he did. Hold him responsible. Don't let him con you.

Trial Tr., April 5, 2001 at 923-24. The petitioner has not explained how that rebuttal argument improperly denigrated his defense. This Court does not believe the argument transgressed the bounds of propriety. Prosecutors are "entitled to wide latitude in rebuttal argument and may fairly respond to arguments made by defense counsel." *Byrd v. Collins,* 209 F.3d 486, 535 (6th Cir. 2000). The prosecutor's remarks amounted to fair advocacy. In addition, the jury was instructed that the attorneys' arguments were not evidence. The prosecution's closing argument did not abridge the petitioner's right to a fair trial.

The petitioner next asserts that "the prosecutor effectively mischaracterized the evidence, [and therefore argued facts not in evidence], because she did not make any effort to differentiate the proper use of 404b evidence regarding Ms. Woehlert and the substantive evidence of the crime that Defendant was actually charged with." Pet. at 50. The challenged argument is as follows:

> What happened to Tammy Tobias and Gina Woehlert, two women who didn't know each other within 48 hours was not a coincidence. And it wasn't a conspiracy. The Defendant raped Tammy Tobias, and we know that because a scheme and a pattern that he demonstrated when he raped Gina Woehlert two nights before.

Trial Tr., April 5, 2001 at 867. This argument does not mischaracterize the testimony. Nor does it ask the jury to consider the uncharged conduct involving Gina Woehlert for an improper purpose. No due process violation can be discerned from this argument.

The petitioner next contends that the prosecutor made an inappropriate civic duty argument to the jury. Although this claim is stated in the habeas petition within the heading for the argument, the petitioner has not set forth any factual basis in the record or cited any legal authority in support. The Court cannot speculate about arguments or comb the record in search of its substance. Therefore, the Court must find that this claim is abandoned, and it will not address it. *See Roberts v. Darr,* 337 F.3d 609, 613 (6th Cir. 2003).

Finally, the petitioner argues that the prosecutor knowingly permitted false testimony by Ms. Tobias to stand without correction, which resulted in the petitioner being wrongfully convicted. The state appellate court addressed this issue as follows:

> Finally, in a pro per supplemental brief, defendant asserts the prosecution knowingly presented false testimony. We disagree.
>
> While a prosecutor may not knowingly use false testimony to obtain a conviction, and has a duty to correct false evidence, *People v. Lester,* 232 Mich. App. 262, 277; 591 N.W.2d 267 (1998), defendant has not demonstrated that the complainant committed perjury. Although the emergency room physician testified that he did not see evidence of injuries to the complainant's head consistent with her claims that defendant beat her, the physician explained that bruises and other injuries could have appeared later. Although the physician's testimony may have called the complainant's credibility into question, it did not establish that she committed perjury

*People v. Heath,* 2003 WL 22339157 at *2.

It is well established that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs,* 427 U.S. 97, 103 (1976). This is true whether the false testimony goes to the defendant's guilt or to a witness's credibility, and it does not matter whether the prosecution directly elicits the false testimony or merely allows false testimony to go uncorrected. *Napue v. Illinois,* 360 U.S. 264, 270-72 (1959). It is equally well established, however, that the petitioner bears the burden of proving that the testimony amounted to perjury. Mere inconsistences in witness testimony do not establish the government's knowing use of false testimony. *United States v. Griley,* 814 F.2d 967, 971 (4th Cir. 1987). "[N]ot every testimonial inconsistency that goes uncorrected by the government establishes a constitutional violation." *United States v. Verser,* 916 F.2d 1268, 1271 (7th cir. 1990). Therefore, to succeed on the petitioner's false testimony claim, he must show that (1) the prosecution presented

-17-

evidence that was false; (2) the prosecutor knew of the falsity; and (3) the evidence was material. *Coe v. Bell,* 161 F.3d 320, 343 (6th Cir. 1999).

The petitioner's argument that Ms. Tobias's testimony at trial amounted to perjury is nothing more than a rehash of his claim that her testimony was incredible as a matter of law and cannot support the conviction. Certainly there were inconsistencies between Ms. Tobias's testimony that she was beaten and the emergency room physician's testimony that her alleged beating was not born out by his physical examination, which did not reveal the marks or bruises expected to be seen following an assault. But there has been no showing that Tobias testified intentionally falsely or that the prosecutor knew of the alleged falsity. In fact, the emergency room physician did testify that bruising is not immediate with all patients, and Tobias's bruising could have become more visible after his examination.

The jury was fully apprised of the inconsistent evidence. It was in the best position to assess the credibility of the witnesses who testified before it, having the benefit of seeing each witness's demeanor and assessing the strength of each one's story after having been subject to cross-examination. It is difficult to find a due process violation in all of that.

The Court finds no basis for habeas corpus relief in the petitioner's prosecutorial misconduct claim.

III.

The Court concludes that the petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt. #1] is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: March 31, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 31, 2008.

s/Felicia M. Moses
FELICIA M. MOSES